# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-0542

MICHAEL T. ACCIOLA, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 10, 2008                                    Decided December 5, 2008)

*Francis M. Jackson*, of Portland, Maine, for the appellant.

*Michael A. Carr,* with whom *Paul J. Hutter,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and LANCE and DAVIS, *Judges*.

DAVIS, *Judge*: Veteran Michael T. Acciola appeals, through counsel, an October 31, 2005, Board of Veterans' Appeals (Board) decision that an April 13, 2000, Boston, Massachusetts, VA regional office (RO) decision did not contain clear and unmistakable error (CUE) when denying his claim for VA benefits. He argues that (1) the Board erred by not recognizing that the RO had committed CUE when it did not consider and apply 38 U.S.C. § 1131 (basic entitlement for service connection), and (2) by not discussing 38 U.S.C. § 1131 when finding no CUE, the Board's statement of reasons or bases is inadequate. Because this Court does not have jurisdiction over the assertion of CUE raised by the appellant in the first instance, that matter will be dismissed without prejudice. For the reasons set forth below, the October 2005 Board decision will be affirmed.

## I. FACTS

The appellant served honorably on active duty in the U.S. Army National Guard from February 9, 1989, to June 16, 1989, although the precise nature of his service has been a central issue in his claim. Record (R.) at 36. Six years after the appellant's service, a February 4, 1995, medical report noted that the appellant was diagnosed with multiple sclerosis (MS) in 1990. R. at 75. Another report of the same date indicated that the appellant had "multiple somatic complaints attributed to [MS]." R. at 73.

In April 1998, the appellant filed a claim for service connection for MS. R. at 87-90. The RO denied that claim in April 2000. R. at 96-100. In the reasons-or-bases section of the decision the RO found that

> [t]here is no evidence that the veteran's [MS] originated during a period of qualifying military service. The veteran's active duty for training is not sufficient to trigger the presumptive provisions shown above [in 38 C.F.R. § 3.307(a)(3) (2000)].

R. at 99. This decision was not appealed and became final.

In March 2003, a Disabled American Veterans (DAV) veterans service officer, representing the appellant, requested that the claim be reviewed in accordance with 38 C.F.R. § 3.105(a) (2008) (previous decisions are final and binding in the absence of CUE) to determine whether the denial of service connection "was warranted pursuant to 38 C.F.R. § 3.307(a)(1) 'chronic'." R. at 60. The letter concluded by stating that "service connection should be established in accordance with 38 C.F.R. [§§] 3.303, 3.304, 3.307." R. at 62. In April 2003, the RO determined that the RO in April 2000 had correctly found that the appellant had not established veteran status, and thus, was not eligible for presumptive service connection under § 3.307. R. at 105. Therefore, the RO determined that the RO's April 2000 decision did not contain CUE. R. at 112. Subsequently, the appellant's representative filed a Notice of Disagreement (NOD) that stated:

> We maintain the [RO] decision of April 13, 2000, is clearly erroneous, for not establishing service[] connection for [MS] as a presumptive (chronic) [condition] pursuant to 38 C.F.R. [§] 3.307(a)(1)(3). A determination of service[]connection requires a finding of the existence of a current disability and determination of a relationship between that disability and an injury or disease in service. 38 U.S.C.[] § 1131.

R. at 114.

In January 2004, the RO's Statement of the Case continued to deny the appellant's CUE motion. R. at 116-37. The appellant appealed to the Board and maintained that "I have met all the requirements pertaining to the regulations stated in 38 C.F.R. [§§] 3.303, 3.304, and the MS that I have is covered under 38 C.F.R. [§] 3.307(a)(1)." R. at 140. His appeal was accompanied by a letter from his DAV representative that stated, in pertinent part:

> The [appellant] maintains service[]connection for [MS] is warranted pursuant to 38 C.F.R. §§ 3.303, 3.304, and 3.307(a)(1). A determination of service[]connection requires a finding of the existence of a current disability and determination of a relationship between that disability and an injury or disease in service, 38 U.S.C.[] § 1131.

R. at 139.

In September 2004, the appellant's DAV representative submitted a statement, on behalf of the appellant, that focused on arguing for service connection solely through the regulatory presumptions afforded by § 3.307 and 38 C.F.R. § 3.309. R. at 146-50. At a personal hearing before the Board, the appellant's DAV representative did not assert that the appellant's MS originated in service, but rather stated unequivocally that the appellant "had no symptoms whatsoever until after 1990." R. at 167. The appellant then testified at length about the nature of his service and that he first noticed symptoms after his active duty for training in 1990. R. at 167-70. After the appellant's testimony, his representative stated: "He definitely had qualifying service. That's where we contend the CUE exists." R. at 174.

In the October 2005 decision here on appeal, the Board, in determining that CUE had not been committed by the RO in April 2000 (R. at 1-10), described the appellant's CUE motion as an allegation that the RO in April 2000 erroneously characterized his service as "not qualifying for the seven year presumptive period for service connection for MS found in 38 C.F.R. [§§] 3.307, 3.309" (R. at 6). The Board relied on this Court's decision in *Biggins v. Derwinski*, 1 Vet.App. 474 (1991), and concluded that the appellant's active duty for training did not make him eligible for presumptive service connection. R. at 7-10. This appeal followed.

3

## II.  ARGUMENT ON APPEAL

On appeal, the appellant does not dispute the Board's reliance on *Biggins* or its determination that he does not qualify for presumptive service connection.  Rather, he argues that in its April 2000 decision the RO committed CUE by not considering service connection for MS on a direct basis, and that the Board erred by not providing an adequate statement of reasons or bases for its decision that in April 2000 the RO had committed CUE because it failed to discuss direct service connection through the application of 38 U.S.C. § 1131.  Appellant's Brief (Br.) at 2-6.  The Secretary argues that the appellant did not raise this theory of CUE to the Board and, therefore, the Court lacks jurisdiction over that issue.  Secretary's Br. at 5-10.  Accordingly, the Secretary argues that the Court should dismiss the appeal.  Secretary's Br. at 10.  In his reply brief, the appellant argues that he was not represented by an attorney at the Board level and that his CUE theory before the Board was that the April 2000 RO decision did not apply the correct law, to include direct service connection.  Appellant's Reply Br. at 1-2.

Prior to oral argument in this case, the Court sought briefing on how to interpret CUE motions filed by non-attorney veterans service organization representatives.  In response to the Court's order, the Secretary conceded that all pleadings are read sympathetically regardless of any type of representation.  *See Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998).  Accordingly, the question presented to the Court is whether a sympathetic reading of the CUE motion and associated allegations and pleadings below raised the CUE theory that the appellant advances on appeal.  For the reasons that follow, the Court concludes that a sympathetic reading of the pleadings below raised only the theory that was recognized and explicitly denied by the Board decision on appeal.

## III.  ANALYSIS

### A. Service Connection

Basic entitlement of veterans to compensation for service-connected disabilities derives from 38 U.S.C. § 1131, which provides, in pertinent part, for compensation to a "veteran" for "disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during other than a period of war."  38 U.S.C. § 1131; *see also* 38 U.S.C. § 1110; 38 C.F.R.

4

§ 3.303(a). For veterans who served for 90 days or more, service connection for certain chronic diseases, including MS, may be established based on a legal "presumption" by showing that the disability manifested itself to a degree of 10% or more within a specified time period after separation from active military service. *See* 38 U.S.C. § 1112; 38 C.F.R. §§ 3.307(a)(1), (3), 3.309 (2008).

Status as a "veteran" is one of the five elements of a claim for service-connection benefits. *See Dingess v. Nicholson*, 19 Vet.App. 473, 484 (2006). The term "veteran" is defined, in relevant part, as "a person who served in the active military, naval, or air service." 38 U.S.C. § 101(2); *see also* 38 C.F.R. § 3.1(d) (2008). "Active duty" means, among other things, "full-time duty in the Armed Forces, other than active duty for training." 38 U.S.C. § 101(21)(A); *Frasure v. Principi*, 18 Vet.App. 379, 385 (2004). When a claim for service connection is based on a period of active duty for training, there must be evidence that the individual concerned became disabled as a result of a disease or injury incurred or aggravated in the line of duty during the period of active duty for training. *See* 38 U.S.C. §§ 101(2), (22), (24), 1110; *Mercado-Martinez v. West*, 11 Vet.App. 415, 419 (1998); *Paulson v. Brown*, 7 Vet.App. 466, 470 (1995). In the absence of such evidence, the period of active duty for training would not qualify as "active military, naval, or air service," and the claimant would not achieve veteran status. 38 U.S.C. § 101(24); *see* 38 U.S.C. §§ 101(2), 1110; *Mercado-Martinez* and *Paulson*, both *supra*. Additionally, without "veteran" status, the seven-year presumption of service connection for multiple sclerosis is not available to claimants. *See Biggins*, 1 Vet.App. at 478.

## B. CUE

"Previous determinations which are final and binding . . . will be accepted as correct in the absence of [CUE]." 38 C.F.R. § 3.105(a). To initiate a request for revision, a claimant must file a CUE motion that collaterally attacks a final decision by an RO or the Board. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000). When reviewing Board CUE decisions, the Court's review is generally "limited to determining whether the [Board] decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc) (citing 38 U.S.C. § 7261(a)(3)(A)). However, whether the appellant has presented a valid CUE allegation and whether an applicable law or regulation was not applied are questions that are reviewed de novo. *See Andrews v. Principi*, 18 Vet.App. 177, 182

(2005) *aff'd sub nom. Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005); *see also Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004) (reiterating that the "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' standard of review . . . contemplates de novo review of questions of law"); *Joyce v. Nicholson*, 19 Vet.App. 36, 42-43 (2005) (in CUE adjudications, Court reviews de novo whether applicable law or regulation was applied). The Court also reviews whether the Board's decision is supported by an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(d)(1); *Russell*, *supra*.

In *Andre v. Principi*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that "each 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the [Board] before [this] Court can exercise jurisdiction over it." 301 F.3d 1354, 1361 (Fed. Cir. 2002). In that case, the Federal Circuit concluded that the CUE arguments raised to this Court by the appellant "did not constitute alternative arguments in support of [CUE] claims previously asserted and decided by the Board . . . . ; Rather, they were entirely separate and distinct claims that the Board's decision had not addressed." *Id*. at 1362; *see also Jordan v. Principi*, 17 Vet.App. 261, 269 (2003), *aff'd sub nom. Jordan v. Nicholson*, 401 F.3d 1296 (Fed. Cir. 2005) ("[T]he change of a theory underlying a CUE claim could be interpreted in certain cases as representing not an appeal of the CUE claim rejected by the Board, but an entirely new CUE claim over which the Board has not rendered a decision and over which the Court thus lacks jurisdiction."); *Russell*, 3 Vet.App. at 315 (when Court reviews Board decision regarding CUE, "[t]he necessary jurisdictional 'hook' for this Court to act is a decision of the [Board] on the *specific issue* of '[CUE]'"); *cf. Jarrell v. Nicholson*, 20 Vet.App. 326, 333 (2006) (en banc) (holding that "each wholly distinct and different CUE theory underlying a request for revision is a separate matter and, when attacking a prior RO decision, each must be presented to and adjudicated by the RO in the first instance and, if not, the Board lacks jurisdiction over the merits of the matter"). When an appellant raises a new theory of CUE for the first time before the Court, the Court must dismiss for lack of jurisdiction. *See Sondel v. Brown*, 6 Vet.App. 218, 219-20 (1994). However, the failure to raise a specific allegation of error "does not waive such a claim—it only delays its adjudication to a time when it is properly raised." *Andrews*, 421 F.3d at 1284.

6

## C. Sympathetically Reading CUE Motions

Both this Court and the Federal Circuit have continually reiterated the specificity requirement necessary for CUE motions. In *Pierce v. Principi*, 240 F.3d 1348 (Fed. Cir. 2001), the Federal Circuit instructed that a CUE movant must describe the alleged error "'with some degree of specificity'" *and* must "provide persuasive reasons 'as to why the result would have been manifestly different but for the alleged error.'" *Id*. at 1355 (quoting *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993)); *see also Andre*, *supra*; 38 C.F.R. § 20.1404(b) (2008) (A sufficiently pled CUE motion must "set forth clearly and specifically the alleged clear and unmistakable error, or errors, of fact or law in the Board decision, the legal or factual basis for such allegations, and why the result would have been manifestly different but for the alleged error"). However, in *Roberson v. Principi*, the Federal Circuit determined the standard to be applied when VA considers the scope of claims for benefits: VA is required "'to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits.'" 251 F.3d 1378, 1384 (Fed. Cir. 2001) (citing *Hodge*, 155 F.3d at 1362). Thereafter, in *Szemraj v. Principi*, the Federal Circuit clarified that "*Roberson* requires, with respect to all pro se pleadings, that the VA give a sympathetic reading to the veteran's filings by 'determin[ing] all potential claims raised by the evidence, applying all relevant laws and regulations.'" 357 F.3d 1370, 1373 (Fed. Cir. 2004) (alterations in original) (quoting *Roberson*, 251 F.3d at 1384). The Federal Circuit clarified this duty in the context of a motion asserting CUE in an earlier VA decision by requiring "a sympathetic reading to the veteran's filing *in that earlier proceeding* to determine the scope of the claims." *Id.* (emphasis added). More recently, in *Andrews*, the Federal Circuit reiterated that "CUE claims must be pled with specificity," 421 F.3d at 1282, but appears to have relaxed this standard by stating that "VA's duty to sympathetically read a veteran's pro se CUE motion to discern all potential claims is antecedent to a determination of whether a CUE claim has been pled with specificity," 421 F.3d at 1283.[1]

---

[1]The Court notes that the Federal Circuit in *Andrews* held that *Roberson* applies only to pro se CUE motions, not those filed by counsel. *See Andrews*, 421 F.3d at 1283. This distinction is apparently solely a creation of the Federal Circuit for which this Court finds no legislative or regulatory support. However, as stated above, the Court need not decide today whether the appellant, represented by a veteran's service organization, is pro se for purposes of sympathetic readings, because VA conceded that it reads all filings sympathetically, regardless of the nature of representation, and did so in this instance.

The case before the Court requires us to reconcile the sympathetic-reading requirement of *Roberson* and *Andrews* with the undisputed requirement that CUE motions must be pled with specificity. In the context of original claims for benefits, the Court has held that "a sympathetic reading of the appellant's pleadings cannot be based on a standard that requires legal sophistication beyond that which can be expected of a lay claimant and must consider whether the appellant's submissions, considered in toto, have articulated a claim." *Ingram v. Nicholson*, 21 Vet.App. 232, 256 (2007). In the context of original claims, a broad reading is generally the one most favorable to the claimant. Broadly reading an original claim will trigger the Secretary's duties to assist as fully as possible and allow the appellant to receive the earliest possible effective date for all the benefits being sought. *See* 38 U.S.C. § 5110 (stating that the effective date for benefits generally "shall not be earlier than the date of receipt of application therefor"). Even if a claim discovered by a sympathetic reading is denied, it can serve to educate the claimant as to the potential for benefits and lead to a successful attempt to reopen with new evidence. A claimant who succeeds on reopening can be awarded an effective date that is no worse than if the original claim was never adjudicated.

In contrast, it is harder in the context of CUE motions to define what amounts to a sympathetic reading because broadly reading CUE motions is a double-edged sword. While a broad reading can lead to faster adjudication of CUE theories and can expedite receipt of benefits if the motion is successful, it also has the potential to have broad res judicata effects as to motions that are denied. *See Bingham v. Nicholson*, 421 F.3d 1346, 1349 (Fed. Cir. 2005) (holding that a Board decision is final as to all theories of entitlement before the Board, not just those actually considered and rejected). Hence, the Court must consider the potential prejudice that would be caused to claimants if the Secretary "sympathetically" reads a theory into a CUE motion and then proceeds to issue a decision rejecting that theory so as to preclude any further attempts at revision. Arguably, CUE theories are more likely to be successful when the claimant (self-represented or with representation) clearly intends to raise it and marshals all the facts, law, and potential arguments in support of it than when the Secretary attempts to construct a theory from a cryptic statement or fleeting reference in a pleading. Hence, the Court must be sensitive to the proper line between allegations that are rough but recognizable and those that lack the necessary specificity.

Certainly, a sympathetic reading of a CUE motion can fill in details where the theory is not fully fleshed out, but it cannot supply a theory that is absent. Accordingly, the Court concludes that *Andrews* does not shift the burden onto the Secretary to imagine ways in which the original decision might be defective. Rather a sympathetic reading of a CUE motion requires the Secretary to fill in omissions and gaps that an unsophisticated claimant may leave in describing his or her specific dispute of error with the underlying decision. *See Canady v. Nicholson*, 20 Vet.App. 393, 402 (2006) (noting that manifestly changed outcome might be "obvious from the context of the pleadings" or "inferred from a sympathetic reading"). For example, the Secretary may be required to infer the appropriate authority based upon a claimant's description of the factual basis of his CUE motion or to review the record for appropriate evidence where the appellant cites to a narrow authority that pertains only to one specific theory of Board error. However, if the pleading could encompass numerous theories that may be raised by the record, the Secretary is not required either to adjudicate them all or to decide which ones have the most merit. In that circumstance, a CUE motion is properly dismissed without prejudice. *See* 38 C.F.R. § 20.1404(b) (stating that the Board must dismiss without prejudice when the Board determines that a CUE claim lacks the requisite pleading specificity); *see also Canady*, 20 Vet.App. at 400 (noting that a request for revision that fails to comply with the pleading requirements of 38 C.F.R. § 20.1404(b) "shall be dismissed without prejudice to refiling"). In saying this, the Court is not trying to establish a bright-line rule. Mechanical rules are easily misapplied to unsophisticated pro se pleadings. Rather the Court recognizes that the difficult task of sympathetically reading CUE motions must apply common sense to balance reasonable assistance to veterans against undue burdens on the Secretary and the negative consequences of sympathetically raising weak CUE arguments only to deny them.

D. Application of the Law to the Facts

The appellant argues that the Court has jurisdiction over his direct-service-connection theory of CUE because it was part of the CUE motion adjudicated by the Board. However, the record on appeal considered by the Board is replete with evidence that the appellant and his representative consistently argued that the April 2000 RO committed CUE when adjudicating his MS claim on a presumptive basis under 38 C.F.R. § 3.307 and § 3.309, the evidence he alleged was overlooked, and why the result would be different but for that alleged error. R. at 60-62, 114, 140, 167. The specific

9

alleged error in the April 2000 RO decision was failing to recognize the appellant's service as qualifying for the § 3.307 presumption of service connection.[2]  *See* R. at 174.  Indeed, this is the specific allegation that VA and the Board developed and adjudicated.  *See* R. at 6 ("This case boils down to whether the RO was correct . . . in characterizing the appellant's service as not qualifying for the seven year presumptive period."), 10 ("[T]he RO's refusal to grant the appellant's claim of entitlement to service connection for MS based on lack of qualifying service was entirely consistent with the law and judicial precedent.").  In his appeal here, the appellant does not present any argument of Board error with respect to the Board's adjudication of this CUE theory.

Throughout the adjudication of his CUE motion at VA, the appellant's only reference to direct service connection is contained in his concluding statements concerning his entitlement when he cites 38 U.S.C. § 1131 (general service-connection entitlement statute) and 38 C.F.R. § 3.303 (discussing general principles relating to service connection).  R. at 62, 114, 140.  In particular, the appellant argues that his references to 38 U.S.C. § 1131 raised this theory below.  The appellant's NOD contains the statement: "A determination of service[]connection requires a finding of the existence of a current disability and determination of a relationship between that disability and an injury or disease in service.  38 U.S.C.[] § 1131," and this line is repeated in the appellant's Substantive Appeal.  R. at 114, 139.  However, none of the appellant's pleadings contain any additional elaboration beyond this paraphrasing of the basic entitlement statute.

Merely citing a general entitlement statute or regulation, as the appellant did in this instance, provides no allegation of error that could be developed as a specific theory of CUE in the April 2000 RO decision.  In effect, it encompasses most—if not all—potential theories of entitlement without giving any guidance to the Secretary as to what the specific error might be.  Accepting a boilerplate reference to the general entitlement statute as a valid CUE motion would amount to creating a pleading gimmick whereby appellants could shift the burden to the Secretary to invent theories of error to adjudicate.  Not only would it be an undue burden on the Secretary to allow CUE motions

---

[2] The appellant appears to have confused service requirements for veteran status with the service requirements for presumptive service connection for chronic diseases.  The 2000 RO found that he did not have service that qualified him as a veteran because of its nature as active duty for training; the length of his service was not at issue.  R. at 99; *see* 38 U.S.C. § 101(21)(A) (active duty for training is insufficient to constitute active duty for veterans status); 38 C.F.R. § 3.307(a)(1) (2008) (veterans who served for 90 days or more are eligible for presumptive service connection for certain chronic conditions).

10

of such broad and undefined scope, it would also harm many claimants, foreclosing the opportunity to raise more detailed theories of CUE after the broad CUE motion was denied.

Of course, a citation to a statute or regulation in a CUE motion can be useful, particularly when coupled with a reference to a specific piece of evidence or disputed fact. Indeed, this case presents a prime example of how the Secretary should interpret CUE motions. In this instance, even though the CUE motion and subsequent pleadings filed by the appellant's DAV representative contain unhelpful boilerplate and confusing non sequiturs, they cite 38 C.F.R. § 3.307 and discuss specifically the concept of presumptive service connection and the number of days of active duty required to be eligible. As noted above, this was specific enough that a sympathetic reading would flesh out the particulars of a CUE motion alleging error concerning the April 2000 RO's application of the law for presumptive service connection. Although the CUE allegation ultimately proved meritless because it failed to recognize this Court's decision in *Biggins*, it was specific enough to be developed and adjudicated. In contrast, a review of the record does not reveal a communication that expresses an allegation of error in the April 2000 RO decision that could be developed into the specific theory of CUE that the appellant has now raised before the Court.

For the above reasons, the Court lacks jurisdiction to consider a CUE motion based on the theory that the April 2000 RO failed to consider direct service connection and that theory is separate and distinct from the theory otherwise raised and adjudicated by VA. *See Jarrell* and *Andre,* both *supra*. Accordingly, the appellant's CUE motion concerning the April 2000 RO's decision to deny entitlement to service connection for MS on a direct basis is a CUE theory that is improperly raised for the first time on appeal and will be dismissed without prejudice. *See Andre*, 301 F.3d at 1361; *Sondel* and *Russell*, both *supra*. As in *Andrews*, the appellant remains free to file a motion with VA asserting that the RO's failure to apply the direct service connection statutes and regulations results in CUE in the April 2000 RO decision, and judicial review will still be available after the Board has made a final decision on that matter.

The appellant's request for revision of the April 2000 RO decision based on this new theory of CUE is not a basis for overturning the Board decision here on appeal and there is no reasons-or-bases error in the Board's decision for failing to discuss the application of 38 U.S.C. § 1131. *See Allday v. Brown,* 7 Vet.App. 517, 527 (1995). Accordingly, the appellant has not raised any

11

allegations of Board error in the adjudication of his CUE motion concerning the April 2000 RO's denial of presumptive service connection for MS and the Board decision will be affirmed.

## IV.  CONCLUSION

After consideration of the appellant's and the Secretary's pleadings, and a review of the record, the Board's October 31, 2005, decision is AFFIRMED.  To the extent that the appellant has raised a CUE motion that has not been presented to the Board, that motion is DISMISSED without prejudice.