# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-0932

ROBERTO V. ORTIZ, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Motion for Panel Decision

(Argued January 14, 2009                                        Decided        March 3, 2010)

*Nancy Lehman*, of West Palm Beach, Florida, for the appellant.

*Tracy K. Alsup*, with whom *Paul J. Hutter*, General Counsel; and *R. Randall Campbell*, Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD, HAGEL, MOORMAN, LANCE, DAVIS, and SCHOELEN, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. GREENE, *Chief Judge*, and KASOLD, *Judge*, filed dissenting opinions.

LANCE, *Judge*: Veteran Roberto V. Ortiz appeals through counsel an August 9, 2005, Board of Veterans' Appeals (Board) decision that denied his appeal for an effective date earlier than June 28, 1994, for his service-connected bipolar disorder. In a single-judge memorandum decision issued on July 28, 2008, the Court affirmed the Board's decision. Mr. Ortiz filed a timely motion for reconsideration, or, in the alternative, for a panel decision. Based upon this motion, a panel of the Court heard oral argument, after which the case was called for full-Court consideration. The Court's July 28, 2008, memorandum decision is withdrawn and this opinion is issued in its place. For the reasons that follow, the Board's August 9, 2005, decision will be affirmed.

# I. FACTS

Mr. Ortiz served in the U.S. Army from October 1958 to August 1960. The San Juan, Puerto Rico, regional office (RO) denied a 1971 claim for compensation and pension for a nervous condition and headaches. Mr. Ortiz did not appeal that RO decision and it became final. On May 29, 1979, Mr. Ortiz again sought benefits for his nervous condition, and submitted evidence in support of his request. In September 1979, the RO denied his request because the evidence submitted was deemed insufficient to warrant reopening his claim. Mr. Ortiz filed a timely Notice of Disagreement (NOD) and, in October 1979, the Secretary issued a Statement of the Case (SOC). The SOC informed Mr. Ortiz that his claim was denied because the evidence he had submitted did not constitute "new and material evidence to reopen" his previously disallowed claim. Record (R.) at 174. The SOC further noted that the evidence submitted was "solely cumulative or repetitive in character" and it failed to establish that a nervous condition was incurred or aggravated in service. *Id.* The cover letter from VA that enclosed the SOC informed Mr. Ortiz that the SOC was being sent to him so that he could make his best argument to the Board as to why VA's ruling "should be changed." R. at 171. VA informed Mr. Ortiz that his argument or "Substantive Appeal" should be set out in the attached VA Form 1-9 and that he should state, in his own words, the benefit he seeks, the facts in the SOC with which he disagrees, and "any errors you believe we made in applying the law." *Id.*

Several months later, in March 1980, Mr. Ortiz filed a statement in support of claim "[k]indly requesting [the] status of my claim of appeal to Washington my request service connection nervous condition." R. at 178. In response thereto, the Secretary sent Mr. Ortiz a letter stating that "you must submit VA Form 1-9 [Substantive Appeal] to reactivate your appeal." R. at 181. In May 1980, Mr. Ortiz responded to the Secretary's letter stating that

> [t]he form was sent out in November 1979, from here, the Veterans at Ponce. I can't see the reason why you are sending me the same form 1-98 [sic] Appeal, if it is already filed up. Please search the records because no action has yet been taken. I hope that you can make an evaluation, since I do not see any reason why you would not want to do it. [S]ince I have all the rights. I was 8 years waiting. I hope you will give me an appointment since I feel very sick and the treatment at Mayaguez consists only of pills and nothing else.

R. at 184.

In June 1980, the Secretary wrote to Mr. Ortiz stating that he had never received his VA Form 1-9. This letter also stated that the Secretary was sending Mr. Ortiz a new Form 1-9 for his completion and signature, and that if the form was not received within 30 days no further action would be taken on his appeal. The record copy of the letter reflects that it was incorrectly addressed to "Mr. Roberto Vidal Ordal." R. at 195. It also reflects that a VA Form 1-9 was enclosed with the letter.

In July 1994, Mr. Ortiz again sought benefits for his nervous condition, and he stated that his medical evidence was at the VA hospital. The RO reopened his claim, but denied it based upon a lack of evidence of treatment for his psychosis during service or within the presumptive period following service. Mr. Ortiz filed an NOD (*see* R. at 242) and, after an extensive procedural history resulting in a March 2000 RO decision, he was granted service connection for bipolar disorder and assigned a 70% disability compensation rating and a rating of total disability based upon individual unemployability (TDIU), effective July 8, 1994. Mr. Ortiz submitted a statement that disputed the July 1994 effective date on the grounds that his condition originated in 1965 and that he had filed a claim for the same benefit in 1971. The RO considered his statement to be an NOD as to his effective date and issued an SOC in July 2001. In response to the SOC, Mr. Ortiz stated that VA had failed to process his 1979 Substantive Appeal in response to the October 1979 SOC, and therefore he requested an earlier effective date for his 100% disability rating.

Over the ensuing years, Mr. Ortiz was granted an earlier effective date of June 28, 1994, for reasons not relevant to this appeal, and he continued to seek a still earlier effective date based on his belief that the Secretary failed to properly process his 1979 claim and appeal of the RO's decision denying that claim. In the decision we consider here on appeal, the Board affirmed the assigned effective date of June 28, 1994, for Mr. Ortiz's bipolar disorder. Relevant to this appeal, the Board concluded that Mr. Ortiz had failed to file a VA Form 1-9, or its equivalent, setting out allegations of error of fact or law, within one year from the RO's September 1979 decision.

## II. ARGUMENTS

Mr. Ortiz argues that he filed a timely Substantive Appeal to the RO's September 1979 decision, but the Board never processed his appeal. He contends that his March 1980 statement in

3

support of claim asking about his appeal, and his May 1980 letter informing the Secretary that he already had filed a VA Form 1-9, constituted a Substantive Appeal because the correspondence reflected his intent to appeal and was the equivalent of a VA Form 1-9. *See* Appellant's Brief at 14. He further argues that his 1979 appeal was pending when he was awarded service connection in March 2000, and that he should be assigned an effective date based on his pending claim.

The Secretary argues that there is a plausible basis for the Board's denial of an earlier effective date. The Secretary contends that the correspondence Mr. Ortiz sent to the Secretary did not contain specific allegations of error of fact or law as required by statute and regulation, and, therefore, it did not constitute a Substantive Appeal. The Secretary argues that, absent the filing of a Substantive Appeal, the September 1979 RO decision became final the May 1979 claim and may not be the basis for an earlier effective date.

### III.  LAW AND ANALYSIS

A. Standard of Review

Although the Board's assignment of an effective date generally is reviewed under the "clearly erroneous" standard of review, *see Canady v. Nicholson*, 20 Vet.App. 393, 398 (2006) ("A Board determination of the proper effective date is a finding of fact that the Court reviews under the 'clearly erroneous' standard set forth in 38 U.S.C. § 7261(a)(4)."), in this instance, an earlier effective date was denied because the Board determined that a Substantive Appeal had not been filed by Mr. Ortiz. Whether a document constitutes a Substantive Appeal is reviewed de novo. *Gibson v. Peake*, 22 Vet.App. 11, 15 (2007). Additionally, the Court reviews the Board's interpretations of statutes and regulations de novo. *See* 38 U.S.C. § 7261 (Court interprets statutory and regulatory provisions); *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation is a question of law."); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (Court reviews "questions of law de novo without any deference to the Board's conclusions of law").

When interpreting a statute or regulation, the "'starting point is its language.'" *Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)); *see Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to the canons of construction."). The

words of a statute or regulation are to be given their plain meaning. *See Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) ("[A] statute is ambiguous only when the application of the ordinary meaning of the words and rules of construction to the plain language of the regulation fails to answer the question at issue. . . . Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or—more importantly—veteran can rely on a statute or regulation to mean what it appears to say."); *see also Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) ("[W]e assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962))); *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (stating that statutory construction "may be characterized as a search for the plain meaning of the statute"); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir.1993), *aff'd*, 513 U.S. 115 (1994).

However, understanding the plain meaning of the statute requires due regard for the context of the provision at issue and consideration of related provisions. *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed."). Furthermore, "even when the plain meaning of the statutory language in question would resolve the issue before the court, the legislative history should usually be examined at least 'to determine whether there is a clearly expressed legislative intention contrary to the statutory language.'" *Glaxo Operations U.K. Ltd. v. Quigg*, 894 F.2d 392, 396 (Fed. Cir. 1990) (quoting *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed. Cir. 1989)).

### B. Statutory Requirements of a Substantive Appeal

In this case, the Court is called upon to interpret the Substantive Appeal provision as it operated in 1980. Then, as now, the administrative appeal for VA claims began with the filing of an NOD and was completed with the filing of a Substantive Appeal. *See* 38 U.S.C. § 4005(a) (1980); *Disabled Am. Veterans v. Sec'y*, 327 F.3d 1339, 1342 (Fed. Cir. 2003). Although 38 U.S.C. § 4005(d)(3) (1980) is now codified as 38 U.S.C. § 7105(d)(3) (2008) and the language in

5

subsection(d)(3) in both the 1980 and the 2008 statutory provisions is identical, the full statutory scheme was not the same.

The Substantive Appeal procedure was introduced by Public Law 87-666, § 1 (Sept. 19, 1962), which was captioned "An Act to improve due process in the consideration and final adjudication of disputed claims for veterans' benefits by providing that the claimant shall be furnished a brief statement of the facts and law applicable to the case appealed and afforded an opportunity to reply thereto." The act required VA for the first time to fully explain its decisions through a new procedure called the Statement of the Case. However, the act balanced this new disclosure rule with a requirement that claimants respond to the SOC with a Substantive Appeal that must clearly identify the benefits sought and "should set out specific allegations of error of fact or law . . . related to specific items in the [S]tatement of the [C]ase." *Id.* The act further provided that "[t]he appellant will be presumed to be in agreement with any statement of fact contained in the [S]tatement of the [C]ase to which no exception is taken" and gave the Board the authority to "dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed."[1] *Id.* Pursuant to this statutory language, the 1979 version of Form 1-9 required specific allegations of error of fact or law.

Based on the language, history, and complete structure of the statute creating the Substantive Appeal procedure, it is clear that the statute must be interpreted as placing a burden on claimants to expand upon their initial disagreement with the RO decision by setting forth—however inartfully—a particular theory of error for the Board to decide. Indeed, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has recognized this point. In *Collaro v. West*, it explicitly held that the "statutory and regulatory regime that Congress created to protect veterans" allows a claimant to file a "vague NOD" and at a later time "cut the rough stone of his NOD to reveal the radix of his issue that lay within." 136 F.3d 1304, 1308-09 (Fed. Cir. 1998). Hence, the purpose of the Substantive

---

[1]When Congress overhauled the appellate process as part of the introduction of judicial review, it made a point of eliminating the presumption of agreement. *See* 38 U.S.C. § 7105(d)(4) (2009) ("The claimant in any case may not be presumed to agree with any statement of fact contained in the [S]tatement of the [C]ase to which the claimant does not specifically express agreement."). However, the Board retains the authority to dismiss any appeal that fails to make a specific allegation of error. 38 U.S.C. § 7105(d)(5) (2009).

Appeal requirement—particularly the requirement as articulated in 1980—was to give the Board some guidance as to what error the claimant perceived.

In interpreting the statute to make the articulation of an argument optional, our dissenting colleagues divorce the sentence in the statute that provides that a claimant "*should* set out specific allegations of error of fact or law" (emphasis added) from the sentence that follows it, within the same statute, providing that the Board "may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed." Our dissenting colleagues essentially read out of the statute this latter sentence and thus mischaracterize this Court's holding. There is no "implicit" holding that "should" means "must." Our holding today is that "should," *coupled with the latter sentence* in the same statute regarding the Board's express authority to dismiss an appeal that does not allege an error, means "must" when the Board dismisses the appeal for failing to set out specific allegations of error. The Court cannot disregard language Congress specifically included in the statute. By giving the Board authority to dismiss an appeal for a claimant's failure to state the error, the statute essentially makes the assertion of an error mandatory or, at a minimum, provides that a claimant assumes the risk of dismissal by the Board if no error is asserted. Of course, if a claimant does not assert error and the Board does not dismiss the Substantive Appeal for failure to assert an error, this Court would not be in a position to review the issue whether the Substantive Appeal was sufficient. In that sense, where the Board has essentially accepted the Substantive Appeal despite no assertion of error, the Board has waived its authority to dismiss the appeal based upon no assertion of error.

## C. Interpreting an Alleged Substantive Appeal

In the light of the discussion above, we must determine whether the appellant filed an adequate Substantive Appeal as to the 1979 denial of his claim. At this point, the Court must address what it means to liberally read a document. Fundamentally, a liberal reading is a relative concept. It does not eliminate the relevant procedural requirement. However, it does require VA to be generous in interpreting a submission in light of what the Secretary needs from the claimant to continue the process. This is easily illustrated by looking at how the requirement has been applied to two distinctly different procedural requirements.

7

Perhaps no procedural requirement in the adjudication of veterans benefits is less burdensome than the NOD. The Federal Circuit has observed that it "is not an onerous task," and that finding that a statement constitutes an NOD merely requires finding "terms that can be reasonably construed as a desire for appellate review." *Gallegos v. Principi*, 283 F.3d 1309, 1314 (Fed. Cir. 2002). Within this framework, the Court has liberally interpreted the statement by an appellant that he "wonder[ed] why [his claim] wasn't allowed back in 1985" to be an NOD as to the effective date of his award. *Anderson v. Principi*, 18 Vet.App. 371, 375 (2004).

On the other end of the spectrum, the standard for setting forth a valid assertion of clear and unmistakable error (CUE) in a final decision is much more demanding. "'In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated.'" *Crippen v. Brown*, 9 Vet.App. 412, 418 (1996) (quoting *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc)). The claimant must provide some degree of specificity as to what the alleged error is, and, unless it is the kind of error that, if true, would be CUE on its face, "persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error." *Fugo v. Brown*, 6 Vet. App. 40, 44 (1993) (emphasis in original); *see also Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir.), *cert. denied*, 528 U.S. 967 (1999) (adopting this Court's interpretation of 38 C.F.R. § 3.105). In this context, we have observed that a liberal reading "can fill in details where [a] theory is not fully fleshed out, but it cannot supply a theory that is absent." *Acciola v. Peake*, 22 Vet.App. 320, 327 (2008).

It is easy to understand why a CUE motion must meet a more demanding standard than an NOD must. At the point that an NOD is filed, the Secretary has issued an initial decision and does not need to know anything more to prepare an SOC than that the claimant is dissatisfied. In comparison, a CUE motion challenges a final decision. Without a theory of error expressed by the claimant, the Secretary lacks the roadmap necessary for adjudicating a collateral attack. *Cf. Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) ("[E]ach 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it."). As we explained in *Acciola*, lowering the threshold of the CUE pleading requirement too much would not only place an unmanageable burden on the Secretary, but would also have veteran-unfriendly consequences even in cases where the Secretary made a sincere effort

8

to invent a theory for the claimant. In other words, even though the liberal reading requirement is a claimant-friendly standard, we must be mindful of what the Secretary requires from a claimant at each stage in order to properly continue the adjudication process.

The Substantive Appeal is complemented by the Secretary's duty to address all issues reasonably raised by the appellant, and the caselaw discussing the Secretary's duty illuminates the scope of the corresponding requirement. It would be illogical to hold that a document was adequate to be a Substantive Appeal yet did not sufficiently define a single issue for the Board to address. In this regard, the Federal Circuit has recently discussed how the liberal reading requirement relates to the Board's obligation to address theories of error in its decision. Ultimately, it concluded:

> We also do not suggest that under the regulations the veteran is entirely relieved of his or her obligation to raise issues in the first instance before the VA where the record is being made. The regulations quite clearly impose such an obligation even in direct appeals, stating that "the Substantive Appeal must either indicate that the appeal is being perfected as to all . . . issues or must specifically identify the issues appealed. . . . [T]he Board may dismiss any appeal which fails to allege specific error of fact or law in the determination, or determinations, being appealed." 38 C.F.R. § 20.202 [(2009)].

*Robinson v. Shinseki*, 557 F.3d 1355, 1361 (Fed. Cir. 2009). Although *Robinson* addressed the current procedures, it is nonetheless informative of how we should liberally read a purported Substantive Appeal under the law as it existed in 1980.

Turning back to the issue of whether the correspondence in this case was sufficient to satisfy the Substantive Appeal requirement, we conclude that it was not. The appellant's May 1980 correspondence stated:

> The form was sent out in November 1979, from here, the Veterans at Ponce. I can't see the reason why you are sending me the same form 1-98 [sic] Appeal, if it is already filed up. Please search the records because no action has yet been taken. I hope that you can make an evaluation, since I do not see any reason why you would not want to do it. [S]ince I have all the rights. I was 8 years waiting. I hope you will give me an appointment since I feel very sick and the treatment at Mayaguez consists only of pills and nothing else.

R. at 184.

Nothing in that paragraph references any part of the SOC or why the denial of the appellant's claim might be erroneous. It does not dispute any finding of fact made by the RO decision. It does

9

not include even the vaguest outline of error for the Board to address. It does not reference any argument made in prior correspondence during the claim. Clearly, the appellant is dissatisfied. However, mere dissatisfaction is the essence of an NOD. Similarly, to the extent Mr. Ortiz's request for VA in March 1980 to "search the records" for his appeal is an inquiry into the status of his appeal, the Court concludes that such status inquiry, without some assertion of RO error, is insufficient to constitute a Substantive Appeal. At the Substantive Appeal stage more is required. In the absence of an identifiable error for the Board to address, we cannot conclude that this correspondence satisfies the requirements of a Substantive Appeal.

Our dissenting colleagues appear to equate the term "issue" with "error." We agree that the 1980 letter identified the general claim of service connection for a nervous condition and it was understandable that Mr. Ortiz was contesting whether new and material evidence had been submitted to reopen the prior denial of that claim. To be clear, however, that misses the mark. It is not sufficient for Mr. Ortiz to merely identify his claim, but rather, as stated above, he must state what *error* was committed by the RO. Although there was only one claim at issue, there are any number of possible errors that could be alleged. For example, the appellant could have asserted that the RO failed to address a particular piece of evidence in the record, that the RO erred in its interpretation of the new evidence it discussed, that the original decision was never final, or that some aspect of the substantive law was misapplied. Accordingly, the fact that the Board could identify the claim does not demonstrate that it could identify any particular substantive, procedural, developmental, or notice error. We cannot agree with our dissenting colleague that a claimant's mere notification to the Secretary that he is appealing an RO's decision denying a claim to reopen fulfills the statutory requirements and precludes the Board from exercising its discretion in finding a Substantive Appeal to be inadequate based on a failure of the claimant to allege any error in the RO decision. While acknowledging "the Board's discretionary authority to reject a Substantive Appeal (or the equivalent)" and the Board's continued "discretion to dismiss an administrative appeal if a Substantive Appeal was untimely or inadequate," our dissenting colleague suggests that we should address the Court's standard of review as to the issue whether a claimant's filing below constituted a Substantive Appeal. The standard of review was clearly established in *Gibson* and we decline to change it here. But under *any* standard of review, the 1980 documents submitted by Mr. Ortiz do

10

not constitute a Substantive Appeal (i.e., an adequate Substantive Appeal) because they fail to allege any error at all in the 1979 RO decision. In this case, two letters from the RO explained to the appellant that it had no record that he had filed a Substantive Appeal and asked that the appellant file a Substantive Appeal. That was not an unreasonable request. The appellant need not be rewarded for his refusal to cooperate. *Cf. Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) (noting that "[t]he duty to assist is not always a one-way street").

Our conclusion is reinforced by comparing the case to some of our prior decisions. The circumstances in *Gibson*, *supra*, are strikingly similar to those presented in this case. In *Gibson*, an RO denied the claimant an award of TDIU. In response to that decision, the claimant obtained a VA Form 1-9, handwrote his disagreement with the RO's decision on separate sheets of paper, attached those papers to the Form 1-9 document, and wrote "see attached sheets" on the form. This submission was treated by VA as an NOD, an SOC was issued, and the claimant was asked to submit a Form 1-9. He did not do so until after the time to submit the form had expired. On appeal, he maintained that his original submission of the Form 1-9 constituted an adequate Substantive Appeal although it was submitted prior to the issuance of the SOC and did not set forth any specific allegations of error of fact or law. The Court held that the original submission of the Form 1-9, even assuming it was possible to consider it a document separate from the attached sheets, could not constitute a Substantive Appeal because it "lack[ed] the specificity that section 7105(d)(3), as reinforced through regulation, requests." *Gibson*, 22 Vet.App. at 17.

As in *Gibson*, the appellant here indicated his subjective desire to appeal to the Board in his 1980 letters to VA. R. at 178 ("Kindly requesting status of my claim of appeal to Washington"). Both Mr. Ortiz and Mr. Gibson were aware that nothing they had submitted to VA was accepted as a Substantive Appeal by the RO. *See id.* at 16 ("None of the documents generated by the RO contained information indicating to the appellant that the RO had received or accepted a Substantive Appeal from him."); *see* R. at 181 ("In reference to VA Form 21-4138 received on March 27, 1980, you must submit VA Form 1-9 to reactivate your appeal."); R. at 195 (letter to appellant stating that VA Form 1-9 "was never received in Veterans Administration"). Both Mr. Ortiz's letters and Mr. Gibson's Form 1-9 contained no allegations of error of fact or law.

11

Further, in another case where no Form 1-9 was submitted, the Court held that an "equivalent in correspondence" to a Form 1-9 must include some allegations of error of fact or law in VA's decision. In *Archbold v. Brown*, the Court concluded that a Substantive Appeal had been filed, absent the submission of a VA Form 1-9, because the appellant had submitted a "written statement [that was] presented to and accepted by the Board [that] specifically identified the issue appealed [and it] contained specific arguments as to the errors made by the RO." 9 Vet.App. 124, 132 (1996). In that case, the appellant submitted a written document to clarify his claims at a Board hearing. *Id.* The document set forth the benefit he was seeking–a reinstatement of his 40% disability rating that had been reduced by VA. He explained how particular evidence supported his belief that he was entitled to a higher disability rating and stated his reduced rating was inadequate. Given this detailed statement and the Board's acceptance of it, the Court determined this constituted a Substantive Appeal because it "contained the necessary information required for a 1-9 Appeal." *Id.*

Unlike *Archbold*, here the appellant's 1980 letters contain almost none of the necessary information required by the Form 1-9 appeal such that they can be construed as an "equivalent in correspondence." The 1979 Form 1-9 required that claimants set forth "in specific detail the benefits sought on appeal and your reasons for believing that the action appealed from is erroneous." *See* VA Form 1-9, June 1979. To be an "equivalent in correspondence" to the 1979 Form 1-9, at a minimum the appellant had to make some effort to explain why the SOC was in error. While the appellant identified his claim, he asserted no reason or theory *why* the SOC was incorrect as the 1979 Form 1-9 requires.

Ultimately, the veterans benefits system—particularly in the era before this Court was created—sometimes requires claimants to be more than passive participants. *Cf. Dusek v. Derwinski*, 2 Vet.App. 519, 521-22 (1992) (affirming the denial of a claim for an increased disability rating based upon the claimant's refusal to cooperate with a VA medical examination); *Wood*, 1 Vet.App. at 193 (noting that "[t]he duty to assist is not always a one-way street"). The Court has recognized that the VA system does not have infinite resources. *Grivois v. Brown*, 6 Vet.App. 136, 139 (1994). Accordingly, it is appropriate for the Secretary to conserve those resources by requiring a reasonable level of cooperation from a claimant. *Id.* In the context of the Substantive Appeal, the statute and regulations in effect require an appellant to state in at least general terms why the RO's decision was

12

erroneous.  As we stressed in *Acciola*, "the Court is not trying to establish a bright-line rule. Mechanical rules are easily misapplied to unsophisticated pro se pleadings.  Rather the Court recognizes that the difficult task of sympathetically reading [pro se pleadings] must apply common sense to balance reasonable assistance to veterans against undue burdens on the Secretary." 22 Vet.App. at 327.  As the correspondence in this case failed to even  state a rough or inarticulate allegation of error, the Board's effective-date determination was correct.[2]

### III. CONCLUSION

Upon consideration of the foregoing, the Board's August 9, 2005, decision is AFFIRMED.


KASOLD, *Judge*, dissenting: Anyone reading the first few paragraphs of the facts as found by the Board and laid out in the majority opinion is left with a clear understanding that (1) Mr. Ortiz timely inquired about his appeal to the Board, (2) the RO either never received his appeal or lost it, and informed Mr. Ortiz that he must file a VA Form 1-9, (3) a frustrated Mr. Ortiz replied to the RO that he had already filed an appeal form and he wanted his appeal processed and wanted benefits for his "nervous condition," later characterized by the Secretary as bipolar disorder.  It is also clear from the facts as found by the Board and laid out by the majority that Mr. Ortiz's 1979 claim had been denied for one reason and one reason only, i.e., because "the evidence submitted was deemed insufficient or inadequate to warrant a reopening of his claim," i.e., failure to submit new and material evidence.  *Ante* at 2; *see also Gibson v. Peake*, 22 Vet.App. 11, 15 (2007) (Court reviews Substantive Appeal de novo).

---

[2]Even assuming, as our dissenting colleague, Chief Judge Greene, states, that the RO erred in 1980 in not forwarding to the Board the issue of the adequacy of Mr. Ortiz's response to the SOC as a Substantive Appeal, the fact that the issue of adequacy remained open and pending until resolved by the Board does not mean that the claim for benefits based on bipolar disorder remained open and pending for 25 years.  The *claim* did not remain pending for 25 years because Mr. Ortiz's 1980 submission was ultimately correctly determined by the Board to be inadequate as a Substantive Appeal and the 1979 RO decision denying the claim, therefore, was final.  The mere passage of time, no matter how long, in resolving the issue of adequacy cannot fix a broken appeal.  The passage of time cannot resuscitate an appeal as to the denial of a claim where the appeal was not effectuated with a proper Substantive Appeal.  Because the 1980 submission here was inadequate as a Substantive Appeal, it does not matter how long the issue of the adequacy of the Substantive Appeal was pending.

The RO's direction that Mr. Ortiz had to submit his appeal on a VA Form 1-9 to reinstate his claim, R. at 181 (April 1980 letter from the RO advising Mr. Ortiz that "he *must* submit VA Form 1-9 to reactivate his appeal") (emphasis added)), was not and is not the law. *See* 38 C.F.R. § 19.116 (1980) (appealing to the Board may be executed with a VA Form 1-9 "or its equivalent in correspondence from a claimant or his representative following the furnishing of a Statement of the Case"); *see also* 38 C.F.R. § 20.202 (2009) (providing that an appeal consists of a VA Form 9 "or correspondence containing the necessary information"). While one might be critical of Mr. Ortiz for his apparent frustration, it is axiomatic that the RO could not force the filing of a VA Form 1-9 before processing the appeal. Moreover, the Court early on recognized that laches will not apply against a veteran. *Browder v. Derwinski*, 1 Vet.App. 204, 208 (1991) (concluding "that the VA benefits system as well as the Veterans' Judicial Review Act both militate against the application of the doctrine [of laches] to cases before this Court" (citing *Manio v. Derwinski*, 1 Vet.App. 140 (1991))). Furthermore, it is the Board, not the RO, that has the authority to dismiss an appeal if the Substantive Appeal is inadequate. 38 U.S.C. § 4005(d)(5) (1980) ("The Board of Veterans' Appeal . . . may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed."), now codified as 38 U.S.C. § 7105(5).

Although the majority lay out the relevant facts at the outset of their opinion, their subsequent discussion and analysis regarding whether a Substantive Appeal had been filed inexplicably focuses only on Mr. Ortiz's May 1980 letter to the Secretary. *Ante* at 8-9. Such a narrow focus is not the law. Whether or not a Substantive Appeal or the equivalent has been filed is determined by considering the totality of the circumstances, *Gibson*, 22 Vet.App. at 17 ("evaluating the content and circumstances" of the veteran's submissions to determine whether they constitute an NOD and a Substantive Appeal); *cf. Jarvis v. West*, 12 Vet.App. 559, 561 (1999) ("In determining whether a written communication constitutes an NOD, on de novo review, the Court looks at both the actual wording of the communication and the context in which it was written."), and providing a liberal and sympathetic reading of the pleadings, *see Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (stating that with respect to "all pro se pleadings, [the Board and the Secretary are required to] give a sympathetic reading to the veteran's filings") (citing *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001)); *Moore v. West*, 13 Vet.App. 69, 74 (1999) (stating that "submissions of VA claimants are

14

to be read liberally"); *see also Acciola v. Peake*, 22 Vet.App. 320 (2008) (Secretary conceding that even pleadings filed by a veteran's representative are to be read sympathetically).

The result reached by the majority comes simply and plainly from their implicit holding that "should" means "must" in the controlling statute and regulation, and in the notice provided to Mr. Ortiz. 38 U.S.C. § 4005(d)(5) ("The appeal *should* set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case." (emphasis added)); 38 C.F.R. § 19.116 (1980) ("The appeal *should* set out specific allegations of error of fact or law." (emphasis added));[3] R. at 171 (October 1979 letter advising Mr. Ortiz that he "*should* set out" his arguments on the attached VA Form 1-9 (emphasis added)). In so holding, however, the majority fail to consider that statutes dealing with veterans benefits are to be liberally construed in favor of the veteran. *See Brown v. Gardner*, 513 U.S. 115, 120 (1994); *see also Gomez v. Principi*, 17 Vet.App. 369, 376 (2003) (Steinberg, J., concurring) (noting that it would be unreasonable to interpret "should" as meaning "must" when the next sentence of the statutory section uses the word "must").

It might be possible to read "shall" as "should," given the context of a complete statutory scheme, but it is wholly incongruous with a liberal construction favorable to the veteran to construe a nonmandatory "should" as a mandatory "must" when interpreting a statute dealing with filing requirements for an administrative appeal for a veteran seeking benefits, as is the case here.

The majority's reliance on cases dealing with CUE for its holding that "should" means "must" is wholly inapposite. CUE deals with attacking an otherwise final decision, *see Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000), and the CUE regulation uses the mandatory "must" as opposed to the nonmandatory "should" with regard to the need to set forth clear error of fact or law. 38 C.F.R. § 20.1404(b) (2009); *see also Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) (noting that "[u]nlike a claim for benefits, a CUE claim subsumes a specific allegation of error" and therefore the claimant must describe the alleged error with specificity).

---

[3] Inasmuch as the RO lacks the authority to determine whether a Substantive Appeal has been filed, *see* 38 U.S.C. § 4005(d)(5) (1980) ("The Board of Veterans' Appeals . . . may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed.") (now codified as 38 U.S.C. § 7105(5)), and the Board did not review it until 2005, the 2005 statute and regulations could be the governing authority. The result is the same, however, since the applicable 2005 statutory provision and regulation governing the Substantive Appeal continue to use "should" with regard to the contents of the Substantive Appeal.

Similarly, the majority's reliance on *Gibson, supra*, to support its implicit holding that "should" means "must" ignores a key factual difference in the cases. In *Gibson*, the purported Substantive Appeal was filed before a SOC was issued. Without an SOC, it would be (and is) impossible to understand what issues in the SOC were (are) being disputed. Here, in stark contrast, Mr. Oritz's letters were sent in shortly after he received the SOC that addressed only one issue—the failure, as determined by the RO, to submit new and material evidence—making it readily understandable what Mr. Ortiz was contesting.[4]

Although our caselaw supports de novo review of whether a pleading below constitutes a Substantive Appeal, I note that in 1980 the Board had, and continues to have, the discretion to dismiss an administrative appeal if a Substantive Appeal was untimely or inadequate. *See* 38 U.S.C. § 4005(d)(5) (1980) ("The Board of Veterans' Appeals . . . *may* dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed." (emphasis added)) (now codified as 38 U.S.C. § 7105(5)). The discretion vested in the Board certainly brings into question what our standard of review should be, *see* 38 U.S.C. §7261(a)(3)(A) (conclusions of the Board are reviewed under the "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" standard of review); *see also Foster v. Derwinski*, 1 Vet.App. 393, 394 (1991) (review of the Secretary's discretionary determinations is under the "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" standard), but even under the "arbitrary and capricious" standard of review, the Board's decision that Mr. Ortiz's filings under the circumstances of this case were insufficient to constitute a Substantive Appeal would be arbitrary and capricious because the issue on administrative review is readily discernable – i.e., the RO's finding that Mr. Ortiz failed to submit new and material evidence. The majority's conclusion to the contrary can be reached only by transforming permissive statutory and regulatory language into mandatory language requiring Mr. Ortiz to provide specific language in his appeal documents, without consideration of the totality of the circumstances under which the documents were filed. This reverses, without explanation, our previous caselaw, *Gibson*, *supra*, and gives new meaning to the duty to assist and a liberal and sympathetic reading of pleadings! *See Szemraj*, *Acciola*, *Moore*, and *Gibson*, all *supra*.

---

[4] The majority's description of possible issues on appeal is a red herring. *Ante* at 10. Surely, Mr. Ortiz could have delineated such issues, but simply appealing the RO's determination that he had not submitted new and material evidence is sufficient issue identification for administrative appeal.

16

Finally, the majority's concern for the lack of infinite resources of the Secretary is commendable, but it misses the mark. No organization has infinite resources, yet adherence to the law nevertheless is required. Here, the law encourages a claimant to specify the issues on administrative appeal; it does not require it. Rather, a Substantive Appeal "should" provide such specificity, but if the totality of the circumstances and liberal reading permit an understanding of the issue on appeal, the statute is satisfied. Mr. Ortiz met that standard, and the Secretary erred in not processing his appeal. The failure to process his appeal kept Mr. Ortiz's claim open until the Secretary finally addressed this issue and granted service connection, giving rise to the effective date issue now on appeal. *See* 38 U.S.C. § 4005(d)(5) (1980) (giving the Board, not the RO, the authority to dismiss an appeal for failing the allege specific error of law and fact) (now codified as 38 U.S.C. § 7105(5)). Under these circumstances, Mr. Ortiz may be entitled to an effective date for the award of benefits as early as 1979, the date of his claim to reopen, or the date his entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400 (2009).

Accordingly, I believe that the decision of the Board regarding an effective date should be set aside and the matter remanded for adjudication of the proper effective date.

GREENE, *Chief Judge*, dissenting: Although I agree with Judge Kasold's analysis, I write separately to highlight a few points. Mr. Ortiz's March 1980 statement in support of claim and his May 12, 1980, letter indicate that he believed he had filed a VA Form 1-9 in November 1979 with regard to his claim and administrative appeal, within 60 days after receiving the October 1979 SOC. The June 1980 response from the Secretary, which notably was addressed to another person and no copy of the VA Form 1-9 that was purportedly sent with the letter is contained in the record on appeal, informed Mr. Ortiz that his VA Form 1-9 had not been received and that he should complete a new VA Form 1-9 and send it back to the RO within 30 days or else no further action would be taken on his appeal. In 1980 VA regulation provided that after an NOD was filed, the RO had discretion to close a case only if *no response* was received to the SOC. *See* 38 C.F.R. § 19.121(a) (1980).

Assuming arguendo that Mr. Ortiz had actually received the letter, he understood that it was directed to him, and that he had been provided another VA Form 1-9, his March and May 1980

submissions to the RO, which were each made in response to the October 1979 SOC, were submitted within one year of the September 1979 RO decision. As required by section 4005(d)(3), any questions as to the timeliness or adequacy of those documents should have been resolved by the Board. *See Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) ("[A] statute is ambiguous only when the application of the ordinary meaning of the words and rules of construction to the plain language of the regulation fails to answer the question at issue . . . . Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or-more importantly-veteran can rely on a statute or regulation to mean what it appears to say."); *see also Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir.1993), *aff'd*, 513 U.S. 115 (1994); 38 C.F.R. § 19.121(a) (1980). Thus, the RO erred by closing Mr. Ortiz's case before forwarding his March and May 1980 statements to the Board to liberally read the documents and determine the timeliness and adequacy of the responses to the SOC. *See* 38 U.S.C. § 4005(d)(3); 38 C.F.R. §§ 19.116, 19.121(a) (1980). Therefore, without following that requirement, the claim remained pending until a decision was made as to the timeliness and adequacy of Mr. Ortiz's responses by the Board. 38 C.F.R. § 3.160(c) (2009) ("pending claim" is "[a]n application, formal or informal, which has not been finally adjudicated"); *see Myers v. Principi*, 16 Vet.App. 228, 235 (2002) (holding that claim remains open after it is placed in appellate status and before resolution by Board); *see also Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995) (claim remains pending where RO fails to follow procedures by issuing SOC after claimant files timely NOD).

Although the Board in the August 2005 decision here on appeal finally made a determination regarding the adequacy of Mr. Ortiz's March and May 1980 statements, that decision does not negate the 25 year period that the claim was pending before the decision was made. *See Myers* and *Tablazon*, both *supra*. As stated above, in March 2000, the RO awarded Mr. Ortiz service connection for bipolar disorder with a 70% disability rating and a rating of TDIU. Because this award was granted while Mr. Ortiz's claim was still pending, I would hold that the Board erred by

not considering the entire period for which the claim was pending to determine the proper effective date.  *See* 38 U.S.C. § 5110(a).  Accordingly, I must dissent.